ON WRIT OF REVIEW TO THE COURT OF APPEAL FOURTH CIRCUIT, PARISH OF ORLEANS
 

 SUMMERS, Justice.
 

 The Orleans Parish School Board contracted with Diboll-Kessels and Associates,. Architects, on February 2, 1959, for the design of a building to be known as Aurora East Elementary School (McDonogh No. 45); the building to be located in the square bounded by Berkley Drive, Cut Off Road, Dickens Drive and Fairfax Place in the city of New Orleans. The School Board then entered into a contract on August 24, 1959 with Pittman Construction Co., Inc., as contractor, and Trinity Universal Insurance Company, as surety, to furnish all apparatus, labor, materials and services for the construction of the school facility in accordance with the plans and specifications prepared by the architects. The condition of the contract was that Pittman “shall well and faithfully perform all and .singular the obligations assumed . .
 
 . ”
 
 .and that the School Board pay $561,000 for the job. The statutory bond furnished by the surety to the contractor was “for the faithful performance of his duties.” La. R.S. 38:2213.
 

 In time Pittman Construction Company, Inc., erected the building, and the School Board accepted the construction as completed on September 12, 1960.
 

 By Act 15 of 1962 the legislature added Section 2189 to Title 38 of the Revised Statutes, the act providing:
 

 Section 1,
 

 § 2189. Prescription
 

 Any action against the contractor on the contract or on the bond, or against the contractor and/or the surety on the bond furnished by the contractor, all .in connection with the construction, alteration or repair of any public works let by the state or any of its agencies, boards, or sub-divisions shall prescribe three years from the registry of acceptance oj such work or of notice of default of the contractor unless otherwise limited,in this said chapter.
 

 Section 2. All laws or parts of laws in conflict herewith are hereby repealed.
 

 It was not until September 1, 1968 that the School Board discovered cracking and other structural failures in the work. On that account it was considered necessary to demolish and replace the entire building at a cost of $750,000 according to tentative estimates. Based upon these disclosures,
 
 *672
 
 the School Board instituted suit on August 1, 1969 alleging the facts set forth above. It is reasonable to infer that the repeated reference to concrete in the petition denotes that the building was constructed of precast concrete panels, which we shall liken to brick or stone for the purpose of this decision.
 

 The suit named the contractor Pittman as one of the defendants, charging it with the use of defective materials and failure to supervise and provide a building in accordance with the plans and specifications.
 

 The architects were also made defendants and charged with failure to properly design reinforcement for concrete members in conformity with the generally accepted practices of the profession in the area. Additionally, the manufacturer and supplier of the lightweight aggregate precast panels used in the construction were made defendants. All were charged with fault and with jointly contributing to the falling to ruin of the building, judgment being sought against them in solido. In the meantime, the ownership of the firm which had supplied the materials was transferred and subsequently liquidated. Suit was dismissed as to that defendant upon motion for summary judgment.
 

 The contractor and its surety each filed exceptions of prescription of three years based upon Section 2189 of Title 38 of the Revised Statutes. Deciding the issues thus presented on the basis of the pleadings and facts conceded in response to requests for admissions, the trial court overruled the exception of prescription filed on behalf of the contractor. This decision was based upon the theory that the contractor is held to a ten-year warranty under Article 2762 of the Civil Code. However, the exception of prescription filed on behalf of the surety was maintained upon the theory that the surety is not held to the ten-year warranty of Article 2762 of the Civil Code.
 

 A suspensive and devolutive appeal was granted to the School Board from the trial court’s order maintaining the exception of prescription filed by Trinity Universal Insurance Company. On that appeal the Fourth Circuit affirmed. 244 So.2d 641. We granted certiorari on the application of the School Board, 258 La. 355, 246 So.2d 679.
 

 It is the position of the School Board that Article 2762 of the Civil Code imposes, upon the contractor a ten-year warranty of good workmanship. Relying upon this premise, its counsel asserts that when the School Board confected its contract with the architects, on February 2, 1959, and with the contractor, on August 24, 1959, this substantive right of warranty accorded by law became an implied covenant in these contracts. This right, it is argued,, continued in existence for a period of ten years from the date of acceptance of the construction, that is, until September 12,.
 
 *674
 
 1970. Therefore, when the falling to ruin of the building became known to the School Board on September 1, 1968, and suit was instituted on August 1, 1969, the School Board’s rights were in full force and effect. Under this theory the three-year prescriptive period enacted in 1962 could not be retroactively applied so as to impair the substantive, legal and contractual rights theretofore vested in the School Board.
 

 Trinity Universal Insurance Company the defendant surety of the contractor contends, on the other hand, that the ten-year period of Article 2762 is a period of prescription and a procedural right; that Act 15 of 1962 (La.R.S. 38:2189) is remedial legislation affecting procedural rights, which under well-known principles of law may operate retroactively. Hence, the argument proceeds, the three-year prescriptive period created by the statute tolled September 12, 1963, three years from the date of “registry of acceptance”. This time elapsed before suit was instituted in August 1969, and, therefore, the School Board’s action comes too late — it is barred by prescription. Furthermore, Trinity makes the argument that the repealing claube of Act 15 of 1962 has the effect of nullifying Article 2762 of the Civil Code as being in conflict with Act 15 of 1962.
 

 In essence, the issue resolves itself into whether Article 2762 is a statute of prescription or a statute which accords a substantive right to the School Board implicit in its contracts with the architect and the contractor. A decision that Article 2762 imposes an obligation upon the contractor which is a substantive right in favor of the School Board, implicit in its contract, will leave' that right unaffected by subsequent legislation (Act 15 of 1962) under constitutional and legislative guarantees against ex post facto laws or laws impairing the obligations of contracts. U.S. Const. art. I, § 10; La. Const. art. 4, § 15; La.Civil Code art. 1945. Conversely, a decision that the ten-year period of Article 2762 is a period of prescription — a remedial right — will permit Act 15 of 1962 (La.R.S. 38:2189) to have retroactive effect barring the School Board’s suit.
 

 Article 2762 of the Louisiana Civil Code (1870) governs the liability of contractors for damages due to badness of workmanship. The article provides:
 

 If a building, which an architect or other workman has undertaken to make by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, the architect or undertaker shall bear the loss if the building falls to ruin in the course of ten years, if it be a stone or brick building, and of five years if it be built in wood or with frames filled with bricks.
 

 The corresponding Article 1792 in the Code Napoleon (1804) reads:
 

 If a building, which an architect or other workman has undertaken to make
 
 *676
 
 by the job, should fall to ruin either in whole or in part, on account of the badness of the workmanship, or even because of badness of the soil, the architect and undertaker shall bear the loss, if the building falls to ruin in the course of ten years.
 

 Article 3545 of the Louisiana Civil Code (1870) is also appropriate, for it fixes the prescriptive period for an action against undertakers or architects for defects in buildings of brick or stone. It reads: “The action against an undertaker or architect, for defect or [of] construction of buildings of brick or stone, is prescribed by ten years.” Article 2270 of the Code Napoleon, from which this article derives, states the same rule somewhat differently. Note:
 

 After the expiration of ten years, the architect and the undertaker are released from all responsibility with respect to the structural parts of the buildings they have put up or directed.
 

 We turn now to French authorities to which the Civilians of this State have often resorted for aid in interpreting articles of our Civil Code. It is a practice this Court has many times endorsed and a practice in keeping with a fine tradition of Louisiana law.
 

 The French scholar Planiol, “combining Roman law and historical perspective with the modern developments and comparative law,”
 
 [1]
 
 discussed these articles of the Code Napoleon and referred to the ten-year period in Article 1792 as “a period of responsibility,” which has been characterized by Judge Lemmon in his dissent in the Court of Appeal as “an implied in law warranty period,” distinguishable from the prescription period set forth in Article 2270. See dissent, 244 So.2d 641. As Planiol explains, the ten years established in Article 1792 is a “time of testing during which the accident must be produced.” 2 Planiol, Traite Élémentaire, de Droit Civil, 1909-17 (11 ed., 1939 La. State Law Institute, tr. 1959).
 

 Baudry-Lacantinerie & Tissier also wrote repeatedly of the rights established in Article 1792 as the imposition of a warranty as distinguished from the prescription of Article 2270. Traite Théorique Et Pratique De Droit Civil, 701-11 bis. (An English translation by the Louisiana State Law Institute, Jaro Mayda, Translator, 1971). The ten-year period referred to in Articles 1792 and 2270 is said to be “established by the statute for both the purpose of governing the availability of the action and for its exercise.” Ibid, at No. 707.
 

 Furthex-,
 

 The statute has merged the warranty and the action into one limitation . and Jaubert, on Art. 1792, concluded that “we find here sanctioned all the custom
 
 *678
 
 ary rules concerning the warranty to which architects and contractors are held”. . . . Also, in its first version, Art. 1792 did not provide for any time limitation, but stated that “the architect is liable during the period provided for in the title dealing with prescription.” This shows that the duration of the warranty and the prescription of the action were envisaged together. Ibid, at No. 708.
 

 Article 2762 is a statement of the general law of warranty recognized by this Court at an early date: “It is an implied condition in every contract, that the work contracted for shall be done in a sufficiently workmanlike manner, and the materials furnished shall not be spoiled.” Lewis v. Blanchard, 8 Mart. (N.S.) 290 (La. 1829); see also Town of Slidell v. Temple, 246 La. 137, 164 So.2d 276 (1964); Dantoni v. Board of Levee Commissioners, 227 La. 575, 80 So.2d 81 (1955); Johnson v. Anderson-Dunham Concrete Co., 212 La. 276, 31 So.2d 797 (1947); Robinson v. Horton, 197 La. 919, 2 So.2d 647 (1941). Article 2762 incorporates this principle of warranty by the contractor in favor of the owner and fixes the period of its duration.
 

 In support of the view that Article 1792 fixes only the time of testing the stability of the building during which the accident must be produced for there to be responsibility, it has been noted that Article 1792 was placed under the heading of lease of services in the Code Napoleon. This scheme was adhered to in Louisiana’s Civil Code where Article 2762 is found in the title “Of Lease” under the chapter heading of “The Letting out of Labor or Industry.” Article 2270 of the Code Napoleon, in contrast, was placed under the heading of prescription which regulates the time within which an action may be brought. Appropriately, the corresponding article of the Louisiana Civil Code, Article 3545, is also found in the chapter devoted to prescription. Planiol, supra.
 

 From these observations and the historical treatment these articles have received, the conclusion is reinforced that the ten-year period of Article 1792 is not a period in which the action must be brought. It is, however, a period during which the falling to ruin must manifest itself. This is illustrated by the position taken by some authorities who hold that these articles fix “the time for testing the solidity of the house,” not one which fixes the time for the bringing of the action. Since both articles, under this view, are construed as fixing the time during which the building must endure, the period during which the action could be brought is fixed at 30 years under the general law of France. Planiol, No. 1914, supra; Cass., 5 Aug. 1879, D. 80.1.17, S. 79.1.405.
 

 Another rule proposed, and one which appears most closely associated with logic and reason, is that the two articles establish two distinct and successive delays of
 
 *680
 
 ten. years. The time for bringing the action in this view commences when the accident happens or the vice is discovered.
 

 In French practice the problem has more often been rigorously resolved against the proprietor. This result has seemingly been influenced, not by the language of the articles, but by the undue burden the other results impose on the contractor, subjecting him to responsibility for what the authorities perhaps considered an unduly long time.
 

 By this third concept the two articles establish a single delay and this delay includes, at the same time, the time during which the responsibility for accidents lasts and the prescription of the action. Plan-id, ibid. This treatment creates an incongrous situation where the period of responsibility and the prescription for bringing the action begin, run together and terminate at the same time. Conceivably, in some circumstances, this would allow no time for bringing the action when the accident happens on the last day of the ten years. The theory has nevertheless received approval. Plañid, ibid.
 

 Significantly none of these interpretations of Article 1792 consider the ten-year period of that article to be a period of prescription. To the contrary, all unquestionably recognize that Article 2270, instead, fixes the period during which the action must be brought; except the first view which holds that both articles fix the warranty period, that is, the time during which the building must endure.
 

 It cannot be successfully argued, therefore, that the ten-year period of warranty or responsibility which Article 2762 imposes upon the contractor or architect is not substantive in character. Especially is this result foretold when we observe some authorities expressing the belief that this warranty may go so far as to give rise to a presumption of fault against the architect when the edifice has perished in whole or in part, thus relieving the proprietor of the burden of proof. Planiol, supra at No. 1915.
 

 In summary, our conclusion is that Article 2762 establishes a substantive right in favor of the School Board that the contractor and the architect shall be responsible if the building shall fall to ruin within ten years, either in whole or in part on account of badness of workmanship. This substantive right is implicit in the School Board contracts confected in 1959. Subsequent enactment of Act 15 of 1962 cannot impair these rights.
 

 Our view on the inapplicability of Act 15 of 1962 to the facts of this case is supported by ample authority in our law. See U.S. Const. art. I, § 10; La.Const. art. 4, § 15; La.Civil Code art. 1945.
 

 The general rule from which there seems to be no dissent is that, where a
 
 *682
 
 statute deals with procedure only, it applies to all actions, to those which have accrued or are pending as well as to future actions. This rule is subject to the qualification that such a statute is void or inapplicable if its operation will necessarily result in the impairing of contracts or the divestiture of vested property rights. (Shreveport Long Leaf Lumber Co. v. Wilson, 195 La. 814, 826, 197 So. 566, 570 [1940]).
 

 To the same effect:
 

 Under the provisions of Section 10 of Article 1 of the Federal Constitution, no state can pass any law impairing the obligation of contracts. Under the provisions of Section 15 of Article 4 of our Constitution, no law can be passed impairing the obligation of contracts. It is a fundamental principle that laws existing at the time a contract is entered into are incorporated into and form a part of the contract as though expressly written therein. It is also well established that the value of a contract cannot be diminished by subsequent legislation. The impairment is not one of degree but any encroachment in any respect upon the obligation cannot be permitted. (Dantoni v. Board of Levee Commissioners,
 
 227
 
 La. 575, 80 So.2d 81 [1955]).
 

 In effect, our holding on the nature of the right created by Article 2762, is that it establishes a cause of action when the badness of the workmanship results in ruin within ten years. This cause of action, therefore, only comes into being when there is a discovery of ruin in the building within the time limit stated in the article. The time within which that cause of action may be asserted is governed by Article 3545. Surely the cause of action cannot be asserted before it accrues, and it must follow that any prescriptive period for asserting the cause of action cannot begin to run until the cause of action
 
 comes
 
 into being. Saunders, Saunders’ Lectures on the Civil Code, 145 (Bonomo ed. 1925). As the record demonstrates, the building was completed and accepted in September 1960, but the ruin of the building was not discovered until September 1968. There was no cause of action, therefore, until 1968, and prescription could not begin to run until that time.
 

 The matter was put clearly and forcefully by MR. JUSTICE PORTER in Hernandez v. Montgomery, 2 Mart. (N.S.) 422, 432 (La.1824), in these words:
 

 . Pothier states that prescription only begins to run from the time when the creditor has a right to institute his demand, because no delay can be imputed to him before that time, hence the maxim, contra non valentem agere, non currit prescripto . . . Indeed the idea of a man losing his right, by not bringing an action, which it was impossible he could bring, involves such a contradiction in itself, and leads to such monstrous injus
 
 *684
 
 tice, that nothing short of the most positive law could authorize any tribunal to sanction such a doctrine. Pothier, traité des obligations, 645; Ibid, traité de prescription, nos. 22 & 23 . . .
 

 Of course, it would not adequately answer Trinity’s contention if we failed to recognize a distinction between statutes of prescription which simply bar the remedy and statutes of peremption which destroy the cause of action itself. Brister v. WrayDickinson Co., Inc., 183 La. 562, 164 So. 415 (1935).
 

 But under either approach Trinity’s position is untenable. If we view Act 15 of 1962 as a statute of peremption, which purports to destroy the cause of action established by Article 2762, we find the Constitutions to be insurmountable obstacles to this position: Act 15 of 1962 may not impair the obligations of contract or vested rights. Then, if it is said that prescription is established by Act 15 of 1962, we find the indisputable proposition presented: prescription cannot run against a cause of action before it comes into being. The plea of prescription filed by the surety cannot be sustained.
 

 If the contractor must answer the charge that the building fell to ruin on account of the badness of the workmanship, the surety “for the faithful performance of his duties” (La.R.S. 38:2213) must also stand responsible with the contractor if the charge is well-founded. Police Jury of Parish of Vernon v. Johnson, 111 La. 279, 35 So. 550 (1903):
 

 For the reasons assigned, the exception of prescription filed by the Trinity Universal Insurance Company is overruled ; the judgments of the trial court and Court of Appeal are accordingly reversed, and the case is remanded for further proceedings consistent with the views herein expressed.
 

 BARHAM and DIXON, JJ., concur.
 

 [1]
 

 . Dainow: Use of English Translation of Planiol,
 
 14
 
 Am.J.Comp.L. 68 (1965).