FORET, Judge.
Wilmer Procell (plaintiff) brought this workmen’s compensation action to recover disability benefits, alleging that he is totally and permanently disabled as a result of personal injuries suffered in a work-related accident. Plaintiff also sought to recover medical expenses, not to exceed $12,500, and penalties and attorney’s fees. Named defendant is the Insurance Company of North America.
The trial court, after trial on the merits, rendered judgment in favor of plaintiff for total and permanent disability ordering defendant to pay plaintiff disability benefits of $65.00 per week, beginning March 14, 1975, for the period of his disability, not to exceed 500 weeks, less a credit for 253 weeks of disability benefits received by plaintiff at the rate of $65.00 per week. The trial court further rendered judgment ordering defendant to pay any medical bills incurred by plaintiff for the treatment of his injuries, not to exceed $12,500[1].
Defendant appeals from the trial court’s judgment and raises the following issue:
Whether the trial court committed manifest error in finding plaintiff to be totally and permanently disabled after January 25, 1980.
Plaintiff has answered the appeal, complaining of the trial court’s failure to award plaintiff the statutory penalties and attorney’s fees for defendant’s alleged arbitrary, capricious, and unreasonable actions in terminating payment of disability benefits to him.
FACTS
The parties stipulated that plaintiff was employed by SCA Services, Inc., on March 14,1975, when he received personal injuries in a work-related accident. It was further stipulated that defendant did provide workmen’s compensation insurance coverage for SCA Services, Inc. on that date, and that it paid the appropriate disability benefits to plaintiff of $65.00 per week from the date of the accident to January 25, 1980.
PLAINTIFF’S ALLEGED DISABILITY
Defendant contends that the trial court committed manifest error in finding plaintiff to be totally and permanently disabled after January 25, 1980. It argues that the evidence clearly indicates that plaintiff is gainfully employed, and that the nature of plaintiff’s present employment duties is similar to that of those he was performing at the time he was injured.
*862 The evidence shows that defendant voluntarily paid disability benefits to plaintiff for total and permanent disability from March 14, 1975, until January 25,1980. On the latter date, defendant terminated payment of those benefits upon learning that plaintiff was once again employed. Defendant argues that plaintiff was no longer disabled as of that date.[2]
Both parties appear to agree that the issue of whether plaintiff is totally and permanently disabled should be decided in light of the statutes, and jurisprudence interpreting them, in effect at the time of plaintiff’s injury. As noted above, plaintiff was injured on March 14, 1975. Acts 1975, # 583, § 9 (effective September 1, 1975), constituted a major legislative revision of LSA-R.S. 23:1221, and its definitions of the various types of disability.
As a general rule, laws are deemed to be prospective in effect unless their language clearly indicates otherwise. LSA-C.C. Article 8; LSA-R.S. 1:2; Green v. Liberty Mutual Insurance Company, 352 So.2d 366 (La.App. 4 Cir.1977), writ denied, 354 So.2d 210 (La.1978); Doucet v. Insurance Company of North America, 302 So.2d 731 (La.App. 3 Cir.1974), writ denied, 305 So.2d 134 (La.1974). However, the general rule of prospective application applies only to substantive laws as distinguished from merely procedural or remedial laws, which will be given retroactive effect in the absence of language showing a contrary intention. Lott v. Haley, 370 So.2d 521 (La. 1979); Ardoin v. Hartford Accident & Indemnity Co., 360 So.2d 1331 (La.1978); General Motors Acceptance Corp. v. Anzelmo, 222 La. 1019, 64 So.2d 417 (1953). This jurisprudential rule, itself, is subject to the exception that procedural and remedial laws are not accorded retroactive effect where such retroactivity would operate unconstitutionally to disturb vested rights. Lott v. Haley, supra; Orleans Parish School Board v. Pittman Construction Co., 261 La. 665, 260 So.2d 661 (1972). Finally, where an injury has occurred for which the injured party has a cause of action, such cause of action is a vested property right which is protected by the guarantee of due process. Lott v. Haley, supra; Burmaster v. Gravity Drainage District No. 2 of the Parish of St. Charles, 366 So.2d 1381 (La.1978); Johnson v. Foumet, 387 So.2d 1336 (La.App. 1 Cir.1980).
Plaintiffs claim that he is totally and permanently disabled will be decided under the statutes and jurisprudence in effect at the time of his injury.
Knispel v. Gulf States Utilities Company, 174 La. 401, 141 So. 9 (1932), provided the following interpretation of the Louisiana Workmen’s Compensation Act’s definition of “total” disability that was the accepted standard for measuring said disability until the revision of LSA-R.S. 23:1221, in 1975. See 13 La.Civil Law Treatise: Workers’ Compensation, § 273, pg. 603 (Malone and Johnson, 2nd Ed.).
Knispel stated on page 12 that:
“The disability should, we think, be deemed total to do work of any reasonable character, within the intendment of the law, whenever it appears that the employee, due to the injury, is unable to perform work of the same or similar description that he is accustomed to perform. When he is unable to perform such character of work, his occupation, due to the injury received in his employer’s service, has been taken from him, and he is in the world without an occupation. In his position he is wholly incapacitated, and what little he may learn or be able to do thereafter will likely be done under greater difficulties, placing him at a dis *863 advantage even in securing what work he may be able to perform.”
The evidence shows that plaintiff is an unskilled or manual laborer. Under the jurisprudence in effect at the time of plaintiff’s injury, it was an established rule that a common laborer would be considered as being totally disabled from doing work of any reasonable character within the meaning of the Louisiana Workmen’s Compensation Act if his injuries disabled him from performing work of a kind similar to that which he was accustomed to performing, or if his injury was of such a character that it appeared he would be substantially handicapped in competing with other able-bodied workers in the regular common labor market. Carlisle v. Great American Insurance Company, 291 So.2d 449 (La.App. 2 Cir.1974), writ denied, 292 So.2d 244 (La.1974); Stephney v. Robertson, 219 So.2d 9 (La.App. 4 Cir.1969), writ denied, 222 So.2d 65 (La.1969), and numerous cases cited therein.
As was noted in 13 La.Civil Law Treatise: Workers’ Compensation, § 273, pg. 605 (Malone and Johnson, 2nd Edition):
“The unskilled or manual laborer enjoyed a limited application of the formula. The tasks assigned to the unskilled worker vary from job to job and even one hour to the next. Hence it was thought to be unfair to conclude that the manual worker was totally disabled if he could not perform the precise operation in which he was engaged at the time of the accident or if he could not do every act that an employer of manual labor could conceivably order him to do. Accordingly, it was generally held that the unskilled laborer was not totally disabled so long as he could do work of reasonably the same character as that performed prior to his injury.44 He would be regarded as totally disabled only when he could not substantially compete for regular employment with able-bodied workers in the flexible market for common labor.” (Emphasis ours.)
The formula referred to in the above quoted passage was that set forth in Knis-pel for determining whether a worker was totally disabled.
Plaintiff herein testified that his first employment consisted of: “Odd end jobs like roofing or something like that”. He was then employed by the City of Shreveport as a garbage collector for some nine or ten years. While so employed, his main duty was to ride on trucks and collect garbage along certain routes. He then went to work for SCA Services, Inc., where his duties consisted of driving a truck, pushing containers of garbage to the rear of the truck to be mechanically lifted and emptied into it, and picking up 50-gallon drums of garbage. Plaintiff suffered an injury to his back while pushing a container of garbage to the rear of a truck, and he was hospitalized.
William S. Bundrick, M.D., an orthopedic surgeon, treated plaintiff for his back injury in consultation with Dr. E.B. Pittman. He testified by deposition at the trial of this matter. Dr. Bundrick saw plaintiff a total of five times, while he was hospitalized. He stated that plaintiff gradually improved and he was discharged from the hospital on March 22, 1975, a week post-accident. Plaintiff continued to experience back pain, and Dr. Pittman readmitted him to the hospital on April 14, 1975. At that time, a lumbar myelogram was performed on plaintiff. This test and another confirmed that plaintiff had a defect consistent with a finding of a herniated disc at the L4-5 interspace on the right. Dr. Bundrick estimated that plaintiff had a 15% partial permanent disability to the body as a whole at this time.
Plaintiff went to work for T.J. Ivy, Jr., on August 16, 1979, driving a truck used in Ivy’s logging operations. He was earning $45 per day at the time, but was earning $50 per day at the time of trial. Prior to that, he had worked for one Junior Mitchell for three months in early 1979, driving a logging truck. Ivy testified that plaintiff’s primary employment duty is to drive the logging truck. The logging truck has four metal stakes that fit into short pieces of pipe on it, and these hold the load as plaintiff drives to various wood processing facili *864 ties. At some mills, plaintiff is required to perform a task known as “tripping the stakes”.
To secure a load in place, plaintiff uses two binders, each of which is attached to a stake and a chain. The chains are then attached to opposing stakes on the other side of the truck. The binders are used to place tension on the chains so that the load is held in place. In tripping the stakes, a large machine is driven to the side of the truck and holds the load in place. Plaintiff then attaches a ten-foot length of chain to the binders and, by pulling on the chain, he relases them, allowing two of the stakes to fall to the ground. He then moves the stakes out of the way, and the unloading machine goes around to the other side of the truck to push the logs off onto the ground. Plaintiff then has to lift these stakes approximately four or five feet and replace them on the truck. Ivy testified that each stake weighs about 50 to 60 pounds and consists of a four-inch steel pipe that is about 6 feet long. Plaintiff receives help at some mills in replacing the stakes, but at others he must do this by himself. This is the heaviest physical labor that plaintiff performs in his current employment.
Plaintiff testified that he is constantly experiencing pain in his back, although it varies in intensity. He stated that he takes Excedrin to relieve his back pain, when it really bothers him. On days that he does require this analgesic to relieve his pain, he never takes it more than twice a day. Plaintiff was involved in a head-on collision with a hearse on January 16, 1981, while driving the logging truck. This caused him to lose control of the vehicle, which turned over and ejected him from the cab. However, plaintiff stated that the only injury he suffered in the accident was to one of his shoulders. He did not aggravate his back injury.
Plaintiff again saw Dr. Bundrick on February 2, 1981. Dr. Bundrick testified that plaintiff was complaining of occasional low back pain, and that he made no mention of the collision he had been involved in a month earlier. Dr. Bundriek’s examination revealed no evidence of nerve root irritation, nor spasm in the muscles of plaintiff’s back. His neurological examination was completely normal. He concluded that plaintiff had either not suffered a herniated disc as a result of his back injury or that it had healed over. He saw no reason to conduct any further tests.
Dr. Bundrick felt that plaintiff could lift objects weighing between 30 to 40 pounds, if he did so properly. However, he would not recommend that plaintiff lift anything weighing in the range of 75 to 100 pounds as this might cause his disc injury to recur. Dr. Bundrick believed that plaintiff’s back condition had changed significantly between his examination in 1977 and 1981. He stated that if plaintiff had not sought medical attention for his back pain during this time period, then he was not suffering from any significant pain. Plaintiff admitted he had not sought medical attention for back pain during this time period. Based on his examination in 1981, Dr. Bundrick opined that plaintiff had no significant disability. He felt that it was possible that plaintiff could lift objects weighing as much as 75 pounds without. experiencing any back pain, or only occasional stiffness when he returned home from work.
Ivy testified that plaintiff does complain of back pain. • He did not know if plaintiff ever missed work because of this pain. He stated that plaintiff doesn’t miss work any more than any other employee. Plaintiff works anywhere from six to twelve hours a day, depending on weather conditions, machinery breakdowns, etc. Randall Broadway, one of Ivy’s former employees that worked with plaintiff, testified that plaintiff complained of back pain every now and then, and that sometimes he would complain that the pain was severe. Dean Ox-ley, another of Ivy’s former employees that worked with plaintiff, testified that plaintiff complained of back pain every once in a while. Plaintiff told him that his back hurt most of the time. Barbara Procell, plaintiff’s wife, testified that plaintiff experienced moderate to severe pain in his back *865 and legs at times. However, the pain was relieved by aspirin or Tylenol. She stated that plaintiff’s wreck did not seem to have any effect on his back problems.
It is our opinion that the evidence shows that on January 25, 1980, plaintiff was able to perform work of a kind similar to that which he was accustomed to performing, and that his injury is not of such a nature that he is substantially handicapped in competing with other able-bodied workers in the regular common labor market. Plaintiff’s condition was essentially the same at the time of trial. Thus, the trial court’s finding, that plaintiff is totally disabled, is clearly wrong.
It is also our opinion that under LSA-R.S. 23:1221(3), in effect at the time of plaintiff’s injury, and the jurisprudence interpreting that statute, plaintiff is unable to recover benefits for permanent partial disability. This jurisprudence held, in substance, that benefits were payable under LSA-R.S. 23:1221(3) only when the injured employee had sustained partial permanent disability that was functional in nature and resulted in impairment or reduction of his earning capacity. In most of the cases where such an award was made, it appears the claimant had returned to work of a similar nature but because of residual functional disability, his earning capacity was impaired or reduced. White v. United States Fidelity & Guaranty Company, 158 So.2d 210 (La.App. 3 Cir.1963); Ventress v. Danel-Ryder, Inc., 225 So.2d 765 (La.App. 3 Cir.1969).
In the present case, the evidence shows that there was no disability which impaired or reduced the earning capacity of plaintiff on January 25, 1980. In fact, plaintiff was earning more at that time than when he was injured, and was still doing so at the time of trial. Plaintiff certainly failed to prove any impairment or reduction in his earning capacity.
ANSWER TO APPEAL
Plaintiff answered this appeal and raises the issue of whether the trial court committed manifest error in denying his demands for penalties and attorney’s fees. Because of our decision herein, this issue is moot,
DECREE
For the above and foregoing reasons, the judgment of the trial court is reversed. Judgment is hereby rendered in favor of defendant and against plaintiff, dismissing plaintiff’s action with prejudice.
All costs of this appeal, and in the trial court, are assessed against plaintiff-appel-lee.
REVERSED AND RENDERED.

. With regard to this portion of the trial court’s judgment, we note that there is no evidence whatsoever to indicate that defendant has failed to pay any of the medical expenses incurred by plaintiff for the treatment of his injuries.

. Under the provisions of LSA-R.S. 23:1331, defendant would have had the right to seek judicial modification of any previous judgment rendered against it, ordering it to pay disability benefits to plaintiff, based on the grounds that plaintiffs disability or incapacity had subsequently diminished. In the interest of judicial economy and efficiency, we will treat this action as one to modify a previous award of compensation, as well as an action for compensation. The evidence in the record is pertinent to both types of action, and the record is complete. Our determination will be based on plaintiffs medical condition as of January 25, 1980.