NORRIS, Judge.
This matter arises out of an application for writs and an appeal in an action for injunctive relief filed by Southwestern Electric Power Company (SWEPCO) against William B. Parker, III, a landowner, J. P. Boyter, and Boyter Brothers Drillers, his drilling contractors.
On May 7, 1982, we granted writs while an appeal was pending and issued this stay order:
IT IS ORDERED that a stay order be and it is hereby issued by this Court directed to defendant, William B. Parker, III, restraining and prohibiting him from *136 taking any further steps in accordance with the judgment of April 28, 1982, except for the continued production of oil from that well which is located approximately 47 feet West of the 69,000 volt transmission line in the SWEPCO right of way across Parker’s property; more specifically restraining and prohibiting Parker from completing the well that is located approximately 38 feet East of the SWEPCO 69,000 volt transmission line on his property and prohibiting any type of workover operations on either of the two wells located within the right of way. This stay order shall remain in force and effect pending a decision on the writ and/or appeal and/or further order of this Court.
This appeal is from a judgment which ordered only a “conditional” preliminary injunction. We consider the writ and the appeal in this opinion and delete the conditions that dilute the efficacy of the injunction.
SWEPCO sought to enjoin defendants from continuing drilling activities within SWEPCO’s one hundred foot right of way across Parker’s property.
The agreement by Parker’s ancestors in title granted a one hundred foot right of way for electrical transmission and distribution purposes and granted unto SWEPCO certain additional rights. This provision of the agreement is pertinent:
Together with the right of ingress and egress over (my) our adjacent lands to or from said right of way for the purpose of constructing, reconstructing, inspecting, patroling, hanging new wires on, maintaining and removing said line and appurtenances; the right to relocate along the same general direction of said lines; the right to remove from said lands all trees and parts thereof, or other obstructions, which endanger or may interfere with the efficiency of said lines or its appurtenances; and the right of exercising all other rights hereby granted. [Emphasis added.]
A 69,000 volt line was constructed in the center of the right of way to transmit electricity in North Caddo Parish.
Parker purchased the property subject to SWEPCO’s right of way for the purpose of drilling for oil in the Nakotash formation, which is productive at approximately 1000 feet. J. P. Boyter and Boyter Brothers drillers began drilling operations for Parker on the right of way about seventeen feet from the power line near the center of the right of way with a ninety foot drilling rig. After SWEPCO protested, Parker agreed to move the drilling rig. Defendants then indicated that they would drill at a location which SWEPCO considered to be outside of the right of way. SWEPCO determined that the changed drill site was within its right of way. Defendants declined SWEP-CO’s request to again move the drill site and drilled two wells, both of which were found by the trial court to be within the right of way. One well was thirty-eight feet and the other was forty-seven feet from the power line.
When Parker announced his intent to continue to drill wells on the right of way, SWEPCO sued and obtained a temporary restraining order pending the hearing on the rule for a preliminary injunction. After the hearing on this rule, the trial court preliminarily enjoined further drilling operations within the right of way and issued a “conditional injunction,” which would allow Parker to complete the two wells he had already drilled on the right of way, subject to certain illustrative guidelines imposed by the court. The parties do not complain of the preliminary injunction, and this appeal is limited to the propriety of the “conditional injunction,” which reads:
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the rule issued herein to defendants seeking a preliminary injunction restraining them from completing any wells presently drilled upon said right-of-way be now recalled and set aside and that a conditional injunction issue herein allowing Parker to complete the two wells presently in existence provided he follows at least the following innumerated non-exclusive conditions which are illustrative only and di *137 rect the defendant to conduct his operations in accordance with the highest standards in the industry and to cooperate with plaintiff SWEPCO in the completion and production of the two wells:
Defendant Parker shall construct a proper road or roads to the wells which will support the heavy equipment which will be necessary to complete and service the wells. SWEPCO shall also be entitled to use this road or roads for access to the right-of-way to perform its own maintenance operations. The area around the wells must be cleared and leveled so as to minimize any hazard which may result from the placing of the equipment at the well sites, particularly during completion and workover operations. Additionally, no oil storage tanks shall be located on the right-of-way and a proper underground pipeline system must be constructed to convey oil from the pumping units to the storage tanks. Further, whenever completion or work-over operations are contemplated, at least seven (7) days’ written notice thereof must be given to SWEPCO by defendant Parker so that SWEPCO officials can coordinate their activities with that of the land owner and completion and workover crews to insure that no hazard exists or is created and to insure that the completion or workover operations do not interfere with the activities of SWEPCO. In the event emergency work on the producing wells is necessary, SWEPCO officials must be notified immediately prior to the commencement of any such operations.
Immediately after the trial court’s opinion was filed on April 7, 1982, Parker informed SWEPCO that he considered one of the wells in question to be outside of the right of way and not subject to the notice requirements of the “conditional injunction.” The trial court had found that both wells were within the right of way. Parker then completed that well and placed that well into production on April 12, 1982. SWEPCO then filed a rule for contempt and obtained another temporary restraining order to prevent Parker from completing the second well. At the hearing on that rule, the trial court clarified its earlier ruling regarding the “conditional injunction” to include completion operations as well as workover operations.
SWEPCO- appeals and assigns these errors:
(1) Admitting into evidence and considering defense exhibits 1-12 and 14-39, the photographs of the 69KV line as it followed the street right of way in Vivian, or the right of way of Louisiana Highway 1 South into Oil City, Louisiana;[1] (2) issuing a conditional injunction allowing defendant Parker to complete or work over the Parker B-l and B-2 wells under the conditions enumerated in its opinion; and (3) burdening SWEPCO with any responsibility for coordinating or monitoring the completion or workover of Parker’s wells located within SWEPCO’s right of way.
In summary, we conclude that the trial court found that SWEPCO’s right of way agreement included the right to remove obstructions which might endanger or interfere with the efficiency of the lines or their appurtenances. The court found that SWEPCO met this burden of showing interference. These findings are supported by the record.
The trial court additionally found that it may be possible to devise a plan whereby the drilling operations could be conducted on the right of way without interference. The two wells already drilled were capable of production simply upon the installation of pumping units. The trial court found that these wells would not inconvenience or interfere with the efficient distribution of electricity to the extent that their completion and any production should be enjoined. Finally, the trial court concluded that with the cooperation of the parties these wells could and should be produced. We must respectfully disagree and conclude that the trial court was manifestly erroneous in conditioning its injunction. Accordingly, we reverse that portion of the judgment.
*138 We agree that the language in the right of way agreement is consistent with the applicable provision of La.C.C. Article 748 as well as Articles 730 and 743. In part these articles provide:
The owner of the servient estate may do nothing tending to diminish or make more inconvenient the use of the servitude. (Article 748)
Doubt as to the ... extent, or manner of exercise of a predial servitude shall be resolved in favor of the servient estate. (Article 730)
Rights that are necessary for the use of the servitude are acquired at the time the servitude is established. They are to be exercised in a way least inconvenient for the servient estate. (Article 743)
If the original location has become more burdensome for the owner of the servient estate, or if it prevents him from making useful improvements on his estate, he may provide another equally convenient location for the exercise of the servitude which the owner of the dominant estate is bound to accept. All expenses of the relocation are borne by the owner of the servient estate. (Article 748)
This record reveals that Parker declined SWEPCO’s offer to remove the right of way at Parker’s expense.
While no Louisiana cases squarely answer to what extent drilling operations may be conducted within a power line right of way, some cases can by analogy, afford us guidance on the issue presented by this appeal.
In Louisiana Power and Light Co. v. Bennett, 107 So.2d 468 (La.App. 1st Cir. 1958), plaintiff sued to enjoin the completion of, and to require the removal of, a wooden structure within its right of way. The court stated:
This right-of-way gives the plaintiff the right to clear any obstructions that may be necessary for it to erect as well as maintain its power lines. It is the contention of the plaintiff that the building of the defendant will interfere with access to the right-of-way for the purpose of maintaining and repairing its transmission lines; that the building, as well as any additions thereto, is an extreme fire hazard; that in the event of a fire the power lines and equipment would be placed out of commission causing considerable expense and delay of restoration.
The defendant submits that plaintiff has no need for a 150 foot right-of-way; that the defendant’s use of the property in the manner complained of does not interfere with the rights granted the plaintiff under the right-of-way agreement; that the use of the property by the defendant creates no greater hazard than exists elsewhere along plaintiff’s transmission lines.
* * t- * * sk
As concluded by the lower court any real defense must be based on an interpretation of the terms of the right-of-way grant. The trial court concluded that the plaintiff proved by experts that the building sought to be removed will interfere with access to the right-of-way to repair and maintain the poles and lines of the plaintiff, and further, that the building constitutes a fire hazard.
The record clearly discloses the plaintiff proved that the defendant had' a building within its right-of-way, was adding to said building and that such building would interfere with the maintenance and repair of plaintiff’s electric power lines. Further that the building is a fire hazard and as such creates a menace to the use of easement and servitude for the purposes for which it was granted. Under the provisions of Article 777 of the LSA-Civil Code, supra, the defendant is committing acts which “diminish” the use of the servitude and “make it more inconvenient.”
Louisiana Power and Light Co. v. Roberts, 408 So.2d 49 (La.App. 3d Cir. 1981) held that a defendant’s plan to build a structure under a 13,000 volt electric line violated the terms of the servitude agreement. The right of way agreement there read and was analyzed as follows:
*139 It is further understood and agreed that grantor reserves to itself full use of the rights of way herein granted or any part or parts of them for any purpose or purposes including, but not limited to, exploration thereon for oil or gas or minerals, ingress and egress to any other lands or roads, construction, use and maintenance of roads thereon, cultivation or fencing in any manner thereon, transportation of timber thereon, or any combination of uses provided that no drilling of wells or mining will be conducted thereon unless no other suitable location is available and provided further that grantor will not intentionally interfere with the exercise by grantee of any of the rights herein granted to it. (Emphasis ours)

The meaning of the language contained in Paragraph 6 of the servitude agreement as quoted above is clear. It simply provides that the grantor reserves unto itself such use of the servitude area as will not interfere with the exercise by grantee of the rights granted to it. Thus, the issue becomes whether or not the construction by defendants of a building within the servitude area, immediately beneath plaintiffs existing transmission line, will interfere, inconvenience or diminish the exercise by LP & L of the rights granted to it under the servitude agreement.
The trial court held that such construction would seriously interfere with LP & L’s rights under the servitude agreement. We fully agree with this conclusion.
iji sfc ¡fc s|s
The trial court’s conclusion is confirmed by the testimony of several experts presented by plaintiff. The record reflects that their testimony is uncontra-dicted. It is well settled that courts are bound to give proper credit and due weight to opinions and conclusions of experts especially when their testimony is unimpeached, uncontroverted and based on sound reasoning and on established facts. See Geismar v. General Gas Corp., 182 So.2d 769 (La.App. 1st Cir. 1966) writ denied [249 La. 259], 184 So.2d 733 (La. 1966). Alvin Calhoun, division land superintendent for LP & L, indicated at trial that the construction of the proposed building would obstruct LP & L’s use of their right of way, pose a fire hazard, and impair LP & L’s ability to properly maintain the electric transmission line. Calhoun also stated that the location of the building directly underneath the electric transmission line could endanger the occupants of the building should the line move or fall onto the structure. Clifford LaFleur, land and right of way superintendent for Central Louisiana Electric Company, Inc., and Dudley Bertrand, division engineer for LP & L, both corroborated Calhoun’s testimony. LaFleur and Bertrand both indicated that the building would constitute an obstruction to the continuity of service to customers as well as an obstruction to the maintenance and operation of the line. LaFleur stressed that the worst hazard is the possibility of fire and its resulting damage to the line. Additionally, V. L. Tolver, a LP & L serviceman, testified that the construction of the proposed building would impede access to the 13 K.V. electric transmission line in that servicemen could not get their equipment in such a position as to repair a break in the line.
We conclude from the evidence in the record that the construction by defendants of a building within plaintiff’s right of way, and particularly, underneath plaintiff’s existing 13 K.V. electric transmission line will constitute an obstruction to the use and maintenance of the line and will seriously interfere with LP & L’s right of passage over its right of way and its use of the right of way in general. Additionally, the threat of fire posed by construction of the building presents a substantial hazard which would cause further problems in the repair and maintenance of the line as well as result in undue delay in restoration of needed services. The trial court concluded the same and we discern no error in such conclusion. [Citations omitted.]
*140 In addition to the recitals contained in the servitude agreement proscribing interference by the grantor with the rights of the grantee, Louisiana Civil Code Art. 748 provides that the owner of the ser-vient estate may do nothing tending to diminish or make more inconvenient, the use of the servitude. This codal article is further authority for the judgment rendered by the trial court. [Citations omitted.]
When parties contract for a servitude, the provisions of the instrument govern the extent and mode of use of the servitude. Armstrong v. Red River, 278 So.2d 496 (La.1973). This principle was further amplified in Red River v. Noles, 406 So.2d 294 (La.App. 3d Cir. 1981), where the owner of the servient estate was ordered to remove a permanent building from the right of way or servitude of the levee district. The court stated:
However, we do not rest our decision merely on the finding that the area of the servitude is actually needed to carry out the functions of the Levee District and the purposes listed in the servitude agreement. The physical area needed to carry out these functions is not open to speculation. When the right of way is the result of a contract, its extent is regulated by the contract. * * * Thus, reasoning a contrario sensu from Articles 705 and 749, when the title provides the exact dimensions of the area affected by the servitude, that contract must be given full effect. The owner of the servient estate may not, by unilateral action, effectively take over unused areas of the servitude by establishing thereon permanent structures. [Citations omitted.]

* * * Therefore, since the terms of the contract govern the extent of the servitude, Noles cannot justify his infringement by saying that his building does not prevent the use of the right-of-way by the dominant estate. * * * Since the Levee District has a right by contract to exercise its servitude on all or any part of the area bargained for, a mandatory preliminary injunction to remove obstructions to this right of use is appropriate.
The agreement here provides that Parker’s use of his land can not interfere with or make more inconvenient the use of the right of way. If an activity endangers or may interfere with the operation of the line and the efficient transmission of electricity, then SWEPCO is entitled to an injunction to prohibit that activity. Mineral operations, whether for exploration, completion, production or workover purposes on the right of way will endanger, obstruct or diminish or make more inconvenient and interfere with SWEPCO’s exercise of its contractual rights. These rights may be and in these circumstances should be enforced by injunction.
The issuance of the “conditional injunction” places an unreasonable burden on SWEPCO and materially impairs its full and free utilization of the entire servitude burdening Parker’s property. Were we to approve the “conditional injunction” of the trial court, we would be condoning the actions of the landowner who, in violation of a right of way agreement, manages to complete his actions before he is temporarily restrained. SWEPCO would have to patrol its 4000 miles of transmission lines to insure that no drilling or other activities are about to take place in order to restrain such encroachments before they reach the “completion” stage. Certainly, this is an unreasonable burden, as well as an impossible task, not contemplated by the agreement, and one which would render right of way agreements of this type virtually meaningless.
There should be no court ordered or created duty upon SWEPCO to monitor or supervise Parker’s activities in the completion, workover, or emergency operations on the existing wells. Should SWEPCO breach this created “duty,” it may be subject to liability for the failure to properly supervise activities which are contractually prohibited. In other words, the effect of the trial court’s ruling is to mandate SWEPCO to supervise activities in which defendants had no right to engage in the *141 first place. Clearly, this effect can not be condoned. To say the least, such a requirement renders the use of the servitude more inconvenient.
We are left with the clear impression that Parker, by virtue of his past actions, clearly intends to use his property in total disregard of the right of way agreement to which he is subject and the existence of which was known to him when he bought the property for drilling purposes. His announced intent can only result in continuous and vexatious litigation.
We reverse, then, the trial court’s issuance of the “conditional injunction” on a finding that it was clearly wrong. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978).
Accordingly, we amend the judgment of the trial court to delete the provisions relating to the “conditional injunction” and order that a preliminary injunction issue herein directed to defendants, William B. Parker, III, J. P. Boyter, and Boyter Brothers Drilling, restraining, enjoining and prohibiting them, their agents, employees, and all persons, firms or corporations acting or claiming to act in their behalf, or in concert with them, from further drilling activities, completion operations, production, work-over operations and any and all other activities in connection therewith on the Southwestern Electric Power Company one hundred foot right of way granted by instrument dated August 14,1964 and recorded in the Conveyance Records of Caddo Parish, Louisiana, in Book 1043 at page 672 over that certain tract of land located in the Northwest Quarter of the Southwest Quarter of Section 36, Township 22 North, Range 16 West, Caddo Parish, Louisiana, pending a hearing on the petition for permanent injunction.
As thus amended and at the cost of William B. Parker, III, the judgment is affirmed.
JUDGMENT AMENDED, and as amended, AFFIRMED.

. Our holding in this case pretermits the necessity of our addressing this assignment of error.