436 So.2d 614 (1983)
Leroy "Lee" J. DAUTREUIL, et al., Plaintiffs-Appellants-Appellees,
v.
Larry C. DEGEYTER, et al., Defendants-Appellees-Appellants.
No. 83-68.
Court of Appeal of Louisiana, Third Circuit.
June 29, 1983.
*615 David W. Groner, New Iberia, for plaintiffs-appellants-appellees.
Perrin, Landry, DeLaunay & Durant, Gerald C. deLaunay, Lafayette, for defendants-appellees-appellants.
Before FORET, CUTRER and LABORDE, JJ.
CUTRER, Judge.
Leroy J. and Shirley M. Dautreuil (Dautreuil) brought suit for a declaratory judgment against Larry C. and Juanita M. Degeyter and others (Degeyter) to have interpreted certain provisions of a conventional servitude of passage. After trial the trial judge "reformed" the servitude agreement to provide that plaintiff and defendants share the "cost of improving the servitude regardless of when or by whom it is improved." Both sides have appealed. We reverse.

FACTS
The trial judge correctly stated the basic facts of this case as follows: (To assist the reader in understanding the facts of this case a rough sketch of the area involved is appended in this opinion.)
"In 1978 Dautreuil, Lee and Landry acquired in indivision a tract of approximately 116 acres of farm land in Iberia Parish near Vida Shaw Road (a public road) for the purpose of developing a residential subdivision.

"On March 23, 1979, Dautreuil, Lee and Landry partitioned the property. Dautreuil acquired the front 33 acres which did not front on Vida Shaw Road but which had access to it via LaChute Street, a public street, * * * while Lee and Landry acquired the rear 83 acres in indivision. The rear tract did not front on either Vida Shaw Road or LaChute Street or any other public road. * * * In the partition Dautreuil granted a servitude of passage to Lee and Landry in the following terms:

`Appearers LEROY (LEE) J. DAUTREUIL and SHIRLEY MIGUEZ DAUTREUIL hereby grant a right-of-way or servitude in favor of the property received by RALPH K. LEE, JR., MARILYN HILLMAN LEE, J. WAYNE LANDRY, and RITA DUGAS LANDRY as above described, and conveys to RALPH K. LEE, JR., MARILYN HILLMAN LEE, J. WAYNE LANDRY, and RITA DUGAS LANDRY, their heirs, successors and assigns a right-of-way or servitude over and across the property received by LEROY (LEE) J. DAUTREUIL and SHIRLEY MIGUEZ DAUTREUIL as described above, said servitude to be sixty (60') feet in width fronting on the Vida-Shaw Road and extending back to the property received by RALPH K. LEE, JR., MARILYN HILLMAN LEE, J. WAYNE LANDRY, and RITA DUGAS LANDRY shown as Tract 2 on the plat of survey attached hereto, the precise location of said servitude or right-of-way to be mutually agreed upon by consent of LEROY (LEE) J. DAUTREUIL and SHIRLEY MIGUEZ DAUTREUIL, their heirs, successors, or assigns, and RALPH K. LEE, JR., MARILYN HILLMAN LEE, J. WAYNE LANDRY, and RITA DUGAS LANDRY, their heirs, successors or assigns.'
"Discussion thereafter ensued between Dautreuil and Lee (the latter apparently *616 as spokesman for his co-owners) as to the location of the servitude. Lee wanted it as an extension of LaChute Street parallel to the common boundary between these properties and the Brendon Country Club property to the west. Dautreuil wanted it parallel to and adjacent to the canal which forms the eastern boundary of these properties.

"On June 30th, 1980 Dautreuil and Lee came to terms and a servitude agreement (prepared by Lee and Landry) was signed by all parties (P.R. Burke apparently having acquired an interest with Lee and Landry) placing the servitude roughly in the center of the Dautreuil property in a "Z" configuration connected to LaChute Street. * * *" (Emphasis ours. Reference to exhibits by trial court omitted.)
The owners had planned to subdivide their respective portions for residential purposes. Lee, Landry and Burke surveyed the rear property and the servitude preparatory to such improvements. However, they abandoned their plans for development of the rear property and sold it to defendants herein. In the deed to defendants, specific reference was made to the servitude agreement. The defendants took no steps to utilize or improve the servitude. They began using the rear acreage for farming purposes.[1]
Dautreuil, on the other hand, proceeded with the development of his front acreage for subdivision purposes. In the process of opening the subdivision Dautreuil laid out his proposed subdivision in such a manner that approximately thirteen lots were fronting along the servitude in question. To be able to sell these lots, it was necessary that Dautreuil open and improve the servitude to give these lots ingress and egress to Vida Shaw Road. To accomplish this, Dautreuil graded and placed shell on a portion of the servitude, leaving the remainder of the servitude (454 feet) unimproved.
Defendants had taken no steps to improve or use any of the servitude and had taken no steps that would indicate an intended use of their property for subdivision development. They refused to pay for the improvements that had been made by Dautreuil.
Dautreuil filed suit to have the trial court declare that Degeyter was obligated to pay for the improvements made by him.
To resolve the controversy the trial judge, relying on the equities of the situation as he saw them, declared that the servitude agreement between Dautreuil and Lee, et al., which now exists in favor of Degeyter as owner of the dominant estate, required reformation. The trial judge noted "defendants' property does not front on any public road, therefore, sooner or later it is likely defendants will utilize the road and benefit from it," and held "that justice requires that the servitude agreement be reformed to provide that plaintiffs and defendants shall each bear one-half the cost of improving the servitude area regardless of when or by whom it is improved."
Both Dautreuil and Degeyter have appealed; each arguing that the other, alone, should bear the cost of improving the servitude. Both sides cite and rely upon the language of the servitude agreement to support their respective positions.
The issue presented is whether Dautreuil is entitled to a declaratory judgment pursuant to the servitude agreement, stating that Degeyter must pay for Dautreuil's improvement of the servitude of passage. The solution to this issue will be determined by an interpretation of the conventional predial servitude in question.[2]
*617 The principles to be applied in the resolution of the issue are as follows:
Basically, a predial servitude is a charge on one piece of land, a servient estate, for the benefit of another piece of land, a dominant estate; the estates belonging to different owners. LSA-C.C. art. 646. Such a servitude may be established by contract, LSA-C.C. articles 654, 697 and 722; and one such servitude specifically provided for in the Civil Code is the servitude of passage, LSA-C.C. articles 699 and 705. When a servitude of passage is created by contract, that contract regulates the extent of the servitude, LSA-C.C. art. 697, keeping in mind that servitudes are limitations on ownership and, as such, are not favored in law; thus, any doubt as to the existence, extent or manner of exercise of a predial servitude is to be resolved in favor of the servient estate, LSA-C.C. art. 730.
Generally, the owner of a dominant estate has a right to use the servitude in favor of his estate along with any rights which may be accessory to the use of the servitude. LSA-C.C. art. 743. An owner of a dominant estate may go upon a servient estate to make either original works or repairs, at his own expense, which are necessary to the use and preservation of the servitude. LSA-C.C. articles 744 and 745. The owner of the servient estate must suffer the use of his property by the dominant estate but usually is not called upon to do anything to facilitate the dominant estate's use. LSA-C.C. art. 651. The owner of the servient estate is, in fact, precluded from hampering the use of the servient estate by the dominant estate. LSA-C.C. art. 748.
The Louisiana Supreme Court has spoken on the weight to be given to the terms of a contract which establishes a predial servitude. In Ogden v. Bankston, 398 So.2d 1037 (La.1981), the court said:
"This court must give effect to the terms by which such servitudes are established: property owners have the right to establish whatever servitudes they deem proper, `... their power in that respect being limited only by considerations of public policy...' Bernos v. Canepa, 114 La. 517, 520, 38 So. 438, 440 (1905).

* * * * * *
"[W]hen the initial establishment of a servitude does not, by its terms, reserve any special rights in favor of the servient estate, such rights cannot be recreated and superimposed over the terms of the original contract without the assent of the owner of the dominant estate....."
The servitude of passage, executed by Dautreuil and Degeyter's ancestors in title states as follows:
"Grantors [Dautreuil], owners of the property described first hereinabove, for and in the same consideration as that in the deed of partition recorded at COB 706, folio 158, Entry Number 79-2387, Iberia Parish Records, and the agreements and covenants hereinafter made, to hereby grant unto and in favor of the property described secondly below and owned by Grantees, their heirs, assigns and successors [Degeyter], a servitude of passage across and over the property owned by Grantors herein, said servitude of passage being Sixty (60') feet in width and beginning at Point A where the property of Grantors and Vida-Shaw Road are adjacent and contiguous across and over the lot of Grantors to Point B where Grantors' and Grantees' properties are adjacent and contiguous as shown on plat of survey by J. Wayne Landry, C.E., L.S., dated June 16, 1980, a copy of which is attached hereto and paraphed for identification herewith.

"Any road or roadways constructed over and across the above granted right-of-way or servitude shall be at the sole expense of Grantees, their heirs or assigns, and shall be so constructed so as to be acceptable to the Parish of Iberia as a public road.

"After any road or roadways acceptable to the governing authority of Iberia Parish are constructed over and across the above granted right-of-way or servitude and Grantees, their heirs or assigns, desire to dedicate such road or roadways to the public, Grantors, their heirs or *618 assigns, agree to so dedicate that road or roadways." (Emphasis added.)
As we examine the servitude agreement along with the authorities cited above, we conclude that the trial judge was clearly wrong in reforming the agreement and applying the principles of equity.
The language of the servitude agreement provides that the dominant estate has a right to go over and across the servient estate to a public road. As the facts now stand Degeyter's estate is still landlocked. No logical construction of the servitude agreement suggests that the dominant estate agreed to pay for a road which does not allow ingress or egress for the dominant estate. The agreement cannot be interpreted so as to obligate the owners of the dominant estate to pay for the partial improvement of the servitude which improvement does not enure to the benefit of the dominant estate.
A servient estate cannot force a dominant estate to use a right-of-way which exists in favor of the dominant estate.
The very essence of a predial servitude is that the dominant estate has a right to do something which may limit the use of the servient estate. The fact that this is a conventional predial servitude indicates that at least Dautreuil, being a party to the original servitude agreement, understood that his estate would have to suffer the inconvenience of the servitude by the dominant estate. It is only after the dominant estate has gone upon the servient estate that the servient estate can demand certain upkeep and repair from the dominant estate. The servient estate cannot compel the owners of the dominant estate to exercise their right of passage.
The trial judge was clearly wrong in finding injustice in the fact that, in the future, the dominant estate might benefit from Dautreuil's improvements along the servitude right-of-way. Degeyter never sought to use his right of passage and should not be charged for improvements which he does not desire. The trial judge assumes that, because the Degeyter estate is "landlocked," it may one day require access and, thus, since it will benefit from the partial improvement, it should share the cost of the improvement. It is speculation that Degeyter will ever use the right-of-way which exists in his favor. We cannot force him to do so and there is no injustice in Dautreuil having to pay the cost of an improvement to part of the right-of-way which benefits only his estate. Degeyter has the statutory right to either use or not use the servitude. If he chooses not to use same, it may be extinguished by the prescription of non-use.
In conclusion, we find the trial judge, though guided by what he believed to be the equities of the situation, was clearly wrong in holding the servitude agreement in question required reformation. We hold that, in no event, does the servitude agreement contemplate the dominant estate paying for improvements along the servitude right-of-way which do not provide the dominant estate ingress and egress. Further, the essence of a predial servitude is the right, as opposed to the obligation, of a dominant estate to make use of a portion of the servient estate; as such, the servient estate cannot, at its convenience, make improvements along the servitude right-of-way, which improvements the dominant estate neither desires nor contemplates using, and charge these costs to the dominant estate.
For these reasons the judgment of the trial court is reversed and set aside. Plaintiff's suit is hereby dismissed. The costs of the trial court and of this appeal are to be borne by plaintiffs.
REVERSED AND RENDERED.
*619 
NOTES
[1] Apparently defendants have other ingress and egress to the rear property which they use for their farming operations.
[2] The only testimony presented at trial consisted of testimony by Dautreuil and the original owners of the defendants' land (Lee, Landry and Burke) relating to the intent of the parties to the agreement. Since Lee, Landry and Burke are not made parties to this lawsuit this parol evidence will not be considered, Graham v. Congregation of St. Rita Roman Catholic Church, 146 So.2d 666 (La.App. 4th Cir. 1962), and we will limit our review to the actual wording of the pertinent documents.