523 So.2d 1359 (1988)
James Arthur HOSTETLER and Elizabeth Louise Martin McAlister Hostetler, Plaintiffs-Appellants,
v.
W. GRAY & COMPANY, INC., et al., Defendants-Appellees.
No. 19487-CA.
Court of Appeal of Louisiana, Second Circuit.
March 30, 1988.
Rehearing Denied April 28, 1988.
*1361 Evans, Feist, Keene & Mills by George H. Mills, Shreveport, for plaintiffs-appellants.
Nelson, Hammons & Johnson by Sydney B. Nelson, Mayer, Smith & Roberts by Caldwell Roberts, Shreveport, for defendants-appellees.
Before FRED W. JONES, Jr., SEXTON and LINDSAY, JJ.
SEXTON, Judge.
The plaintiffs appeal the trial court's judgment rejecting their demands for the rescission of the sale of the lakefront lot that they bought and for nonpecuniary damages. We reverse in part, amend in part, affirm in part and render.
In March 1986, the plaintiffs filed suit against W. Gray & Company, Inc., the vendor of the lot, and Coyle Engineering Company, Inc., the surveyor who replatted the subdivision. The plaintiffs asked for rescission, damages and attorney's fees. The defendants filed a general denial, and Gray filed a third party demand against Coyle. The defendants filed amended answers alleging that the plaintiffs were contributorily negligent.
The trial court denied the plaintiffs' request for rescission and nonpecuniary damages, but determined that plaintiffs had been damaged in the amount of $26,000, representing a reduction of the purchase price, plus $5,000 in attorney's fees. The court reduced these amounts by twenty-five percent due to the fault of the plaintiffs and rendered judgment in the amounts of $19,500 and $3,750, respectively.
In addition, the trial court entered judgment in favor of Gray and against Coyle for indemnification of the above amounts, less twenty percent for Gray's fault.
Only the plaintiffs have appealed, asking for the rescission of the sale of the lot, damages of $139,000 for the value of the house they built thereon, nonpecuniary damages in the amount of $30,000, and additional attorney's fees of $5,000.

FACTS
In 1984, James Hostetler and his wife, Elizabeth, purchased a lot which was located in Smithland Estates Subdivision on Cypress Lake in Bossier Parish for $29,000. The developer of the subdivision was W. Gray & Company, Inc. Prior to the purchase, the plaintiffs were provided with a subdivision plat prepared by defendant Coyle Engineering Company, Inc. for Gray. The plat showed a flowage easement going across the lower portion of their lot. The flowage easement is the line above which the Cypress-Black Bayou Lake Commission cannot raise the lake.
In 1980, Coyle had prepared the original plat which showed the natural drainage running through the middle of one or more lots. Gray asked Coyle to replat the subdivision so that the drainage would not be in the middle of the lots. Gray also asked Coyle to show the flowage easement on the replat. In platting the flowage easement, Coyle relied upon a prior topographical survey which Gray provided. On that topographical survey was the following statement: "I hereby certify that is [sic] topographical survey is true and suitably accurate *1362 for preliminary planning purposes" (emphasis added).
On the replat, Mr. Coyle put the following note: "This property is subject to a flowage easement to the 187.5 M.S.L. contour shown approximately hereon." (Emphasis added.) The replat was recorded in the public records of Bossier Parish. It was this replat that was given to the plaintiffs.
Prior to building their house, plaintiffs submitted their plans to the architectural control committee. Mr. Gray, on behalf of the committee, approved the plans. According to the declaration of covenants, conditions and restrictions for lots six through twenty-eight of the replat of Smithland Estates Subdivision, Unit No. 1, Bossier Parish, Louisiana, no structure could be erected on the lot until the structure plans showing the location of the proposed structure is approved by the architectural control committee. In a letter to the plaintiffs, Mr. Gray approved the house plans. At trial, Mr. Gray emphasized that he approved only the plaintiffs' house plans since the plans submitted by the plaintiffs did not show the location of the proposed house on the lot. The plaintiffs planned to construct most of their house on an area of the lot below the flowage easement.
Ron Hutchison, Gray's realtor, advised the plaintiffs in his land appraisal report that a slightly elevated foundation would be required. Bill Gouge, the plaintiffs' builder and the person that the plaintiffs understood to be Gray's property manager, suggested that all they needed to do was to build the house pad up approximately two feet in order to get the entire house above the flowage easement as shown on the replat.
As the plaintiffs were finishing the house, their next-door neighbor had Coyle prepare another survey. The new survey showed that the flowage easement on the survey provided to the plaintiffs was incorrect. The easement line was actually 125 horizontal feet from the erroneous easement line on the replat. The flowage easement is 187.5 feet mean sea level (M.S.L.). The plaintiffs' expert, James L. White, a registered surveyor, testified that the floor of the house is 186.03 feet M.S.L. Coyle testified that the floor of the house is 186.16 feet M.S.L. Thus, the plaintiffs' entire house is 1.34 to 1.47 vertical feet below the flowage easement.

SPECIFICATION OF ERRORS
The plaintiffs assign the following as errors:
(1) The trial court erred in failing to rescind the sale and award damages.
(2) The trial court erred in failing to make an award to plaintiffs for general damages including mental anguish and moral damages.
(3) The trial court erred in failing to consider evidence concerning flooding of the interior of the house.
(4) The trial court erred in finding that the plaintiffs were twenty-five percent at fault.

RESCISSION
Rather than ordering a rescission of the sale of the lot, the trial court chose to award a reduction in the purchase price. The plaintiffs argue that the trial court erred in failing to rescind the sale.
In a redhibitory action, the judge has the discretion to award a reduction in the purchase price where he finds that the defect in the thing has merely diminished the value of the thing purchased and has not rendered the thing sold useless or totally unsuited to its purpose. LSA-C.C. Art. 2543; Cernigliaro v. Marquis Marine, Inc., 381 So.2d 886 (La.App. 2d Cir.1980); Ark-La-Tex Builders & Realty, Inc. v. Hoge, 344 So.2d 90 (La.App. 2d Cir.1977).
The trial court in the present case was very impressed with the testimony of the defendant's expert, Robin Beck. Mr. Beck, a real estate appraiser in northwest Louisiana, testified that the house and the lot had diminished in value by a maximum of twenty percent. His appraisal was based on his opinion that flood insurance was available and that some types of financing would be available, though V.A. and F.H.A. loans *1363 would probably not be available. Accepting Mr. Beck's testimony, the trial judge awarded the plaintiffs a total of $26,000.[1]
The factual determination of whether rescission or reduction is appropriate will not be disturbed on appeal unless there is a showing of manifest error. Arceneaux v. Domingue, 365 So.2d 1330 (La.1978), on remand, 370 So.2d 1262, writ denied, 374 So.2d 660 (La.1979); Fogal v. Boudreaux, 497 So.2d 366 (La.App. 3rd Cir.1986). However, we find that the trial court was manifestly erroneous in awarding a reduction of the purchase price, rather than a rescission.
Redhibition is the avoidance of a sale because of some vice or defect in the thing sold which renders it either unfit for its intended use or its use so inconvenient or imperfect that the buyer would not have purchased it had he known of the vice. LSA-C.C. Art. 2520; Fogal v. Boudreaux, supra.
The plaintiffs' lot is burdened with a flowage easement or servitude. A servitude that is established in favor of immovable property, as a flowage easement is, is a predial servitude. Ogden v. Bankston, 398 So.2d 1037 (La.1981). "The very essence of a predial servitude is that the dominant estate has a right to do something which may limit the use of the servient estate." Dautreuil v. Degeyter, 436 So.2d 614, 618 (La.App. 3rd Cir.1983). The owner of the servient estate can do nothing to diminish the use of the servitude. LSA-C.C. Art. 748; Ogden v. Bankston, supra. When parties establish a servitude by contract and that contract provides the dimensions of the servitude, the contract governs the extent and the mode of the use of the servitude. Southwestern Electric Power Company v. Parker, 419 So.2d 134 (La. App. 2d Cir.1982); Red River v. Noles, 406 So.2d 294 (La.App. 3rd Cir.1981).
As the owner of the dominant estate, the Cypress-Black Bayou Lake Commission has the right to raise the lake to 187.5 feet mean sea level, and the plaintiffs as the owners of the servient estate cannot stop that action. If the lake is raised to this level, the plaintiffs' house will be flooded. Even though Larry Deen, the executive secretary of Cypress-Black Bayou Lake Commission, testified that the commission has no plans to raise the lake now or in the future, the fact remains that the commission has the absolute right to raise the lake.
The evidence reveals that the extensiveness of the flowage easement renders the lot absolutely useless for residential purposes or, at the very least, so inconvenient and imperfect that the plaintiffs would not have purchased it if they had known of the true location of the easement. The flowage easement covers almost the entire lot. The only portion of the lot on which the plaintiffs could have built their house without encroaching on the easement is between the easement and the twenty-five foot building set back. Thus, the flowage easement made the lot totally useless for its intended purpose.
In addition, the plaintiffs testified that they would not have bought the lot had they known of the true location of the easement. One of the reasons for their refusal to purchase the adjacent lot was the fact that most of that lot, according to the replat, was covered by the flowage easement. Therefore, the plaintiffs are entitled to a rescission of the sale of the lot and return of the purchase price of $29,000.
Under LSA-C.C. Art. 2545, "[t]he seller, who knows the vice of the thing he sells and omits to declare it, besides the restitution of price and repayment of the expenses, including reasonable attorneys' fees, is answerable to the buyer in damages." A manufacturer is presumed to know the defects in the things made by him. Rey v. Cuccia, 298 So.2d 840 (La. 1974). As a result, he is considered a bad faith seller and falls within the ambit of LSA-C.C. Art. 2545. Anselmo v. Chrysler Corporation, 414 So.2d 872 (La.App. 4th Cir.1982).
*1364 This court has held a developer of a subdivision to be a manufacturer of the lots therein and thus presumed to know the defects of the thing sold. Amin v. Head, 419 So.2d 529 (La.App. 2d Cir.1982), writ denied, 423 So.2d 1151 (La.1982). We note that in Amin v. Head there was arguably more of a "manufacturing" than in the instant case. In Amin the defendants took certain actions to improve the drainage of that low-lying lot before the sale. Also, that subdivision was obviously an urban one. Thus, presumably that developer had to provide for a greater level of services than the instant developer. However, in developing the lot at issue here, it is clear that the defendant Gray had to plat the subdivision and provide for convenants and restrictions. Also, this developer had to be certain that sufficient means of ingress and egress existed. While this developer of this rural subdivision may not have had all the responsibilities with respect to streets, sidewalks, services, etc. that the developer of an urban subdivision has, we conclude that the effort necessary to develop this subdivision is sufficient to place the defendant Gray within the ambit of LSA-C.C. Art. 2545, entitling plaintiffs to the damages allowed by that article. We determine for the foregoing reasons that among these damages is the value of the premises they erected on the lot.
The evidence reflects that the plaintiffs paid $29,000 for the lot and they paid $74,400 for the construction of their house. However, as we will detail more extensively later in this opinion, all of the work to clear the lot and a great deal of the finishing work on the house was done by the plaintiffs themselves. The property is therefore more valuable than the sum of the price of the lot and the amount paid for the construction of the house. This fact is made apparent by the $139,000 appraisal submitted by plaintiffs' expert and the $130,000 appraisal submitted by the defendants' expert. (Both appraisals assumed that the easement at issue did not exist.) The trial judge, in assessing the award of damages herein, specifically indicated that in his view the opinion of the defendants' appraiser was the better one. For that reason, we will accept the value assigned by defendants' appraiser to the house and lot and award plaintiffs that figure, $130,000, representing the cost of the lot and the value of the house.

NONPECUNIARY DAMAGES
The plaintiffs have also sought nonpecuniary damages for the mental anguish attendant to their situation. The pertinent articles on nonpecuniary damages are found in the section of the Civil Code dealing with obligations. The obligations articles were recently revised, becoming effective on January 1, 1985. The law in existence when a contract is made becomes a part of that contract as though expressly written into the agreement. Johnson v. Anderson-Dunham Concrete Co., 212 La. 276, 31 So.2d 797 (1947); Dantoni v. Board of Levee Commissioners of Orleans Levee District, 227 La. 575, 80 So.2d 81 (1955); White v. Crook, 426 So.2d 334 (La.App. 2d Cir.1983); West v. State, Through State Superintendent of Public Education, 324 So.2d 579 (La.App. 1st Cir.1975). The contract of sale in this case was perfected in March of 1984; therefore, the former obligations articles apply in this case.[2]
*1365 The courts of this state have not been consistent in their treatment of the issue of whether nonpecuniary damages are recoverable in a redhibition suit. Among the cases holding nonpecuniary damages are not recoverable in a redhibition suit are Stewart v. Darouse, 448 So.2d 693 (La. App. 1st Cir.1984), and Paul v. Ford Motor Company, 392 So.2d 704 (La.App. 3rd Cir. 1980). With increasing frequency, however, nonpecuniary damages have been allowed in this type of action. Robert v. Bayou Bernard Marine, Inc., 514 So.2d 540 (La.App. 3rd Cir.1987), writs denied, 515 So.2d 1107 (La.1987) and 515 So.2d 1108 (La.1987); Gitschlag v. U.S. Home Corporation, 506 So.2d 1236 (La.App. 1st Cir.1987), writ denied, 512 So.2d 1175 (La. 1987); Rasmussen v. Cashio Concrete Corporation, 484 So.2d 777 (La.App. 1st Cir.1986); Bourne v. Rein Chrysler-Plymouth, Inc., 463 So.2d 1356 (La.App. 1st Cir.1984), writ denied, 468 So.2d 570 (La. 1985); McManus v. Galaxy Carpet Mills, Inc., 433 So.2d 854 (La.App. 3rd Cir.1983).
LSA-C.C. Art. 2545 provides that a seller who knows of the vice of the thing he sells and fails to warn of it is liable for damages and attorney's fees. The article does not restrict the damages to pecuniary damages. In fact, the code supports the award of nonpecuniary damages in redhibition suits. LSA-C.C. Art. 2545 is in Book III, Title VII entitled "Of Sale." The first article in that title, LSA-C.C. Art. 2438, provides that: "In all cases, where no special provision is made under the present title, the contract of sale is subjected to the general rules established under the title: Of Conventional Obligations." LSA-C.C. Art. 1934(3), which provides for nonpecuniary damages in cases of breach of contract, is located in the obligations title.
In order to be able to recover nonpecuniary damages under LSA-C.C. Art. 1934(3), the plaintiff must establish that "the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification...." The meaning of this article has generated much discussion in the courts and among law review writers. See Lafleur v. John Deere Company, 491 So.2d 624 (La.1986); Gele v. Markey, 387 So.2d 1162 (La.1980); Meador v. Toyota of Jefferson, Inc., 332 So.2d 433 (La.1976); B & B Cut Stone Co. v. Resneck, 465 So.2d 851 (La.App. 2d Cir. 1985); Litvinoff, Moral Damages, 38 La.L. Rev. 1 (1977); Comment, Recovering Nonpecuniary Damages for Breach of Contract Under Louisiana Law, 47 La.L.Rev. 541 (1987); Note, Nonpecuniary Damages in Breach of Contract: Louisiana Civil Code Article 1934, 37 La.L.Rev. 625 (1977).
The leading case on LSA-C.C. Art. 1934(3) is Meador v. Toyota of Jefferson, Inc., supra. In that case, the Supreme Court denied recovery to the plaintiff for distress and inconvenience caused by the defendant's excessive delay in repairing her vehicle. The court found that "[t]he principal object of the contract, the overriding concern of plaintiff, evident to defendant at the time the contract was entered into, was the repair of plaintiff's automobile with its consequent utility or physical gratification." Meador, supra, at 437. In this respect, the Supreme Court further observed that:
Where an object, or the exclusive object, of a contract, is physical gratification (or anything other than intellectual gratification) nonpecuniary damages as a consequence of nonfulfillment of that object are not recoverable.
Meador, supra, at 437.
Importantly, the Supreme Court also stated that it "has never adopted a strict view but has reached results favoring the broader interpretation of Art. 1934(3)," Meador, supra at 435 (footnote omitted). The Supreme Court also noted in Meador that LSA-C.C. Art. 1934(3) had been mistranslated and stated that the proper English translation was as follows: "When the contract has for its object to confer to someone a purely intellectual enjoyment, such as those pertaining to religion, morality, taste, convenience or other gratifications of this sort...." Meador, supra, at 436 (footnote omitted). Professor Litvinoff further refined the translation in his law review article: "When a contract was made for the purpose of securing to a party a *1366 purely intellectual enjoyment, such as that related to religion, morality, taste, personal comfort or any other kind of satisfaction of that order...." Litvinoff, Moral Damages, 38 La.L.Rev. 1, 8 (1977), (emphasis in original).[3] As can be seen from the true translation of the French text, "intellectual enjoyment" encompassed a variety of values at the time that it was written. According to one scholar, it meant, and should mean today, the "appreciation of values other than economic." Litvinoff, supra, at 9, n. 40. Thus, the French version of LSA-C.C. Art. 1934(3) is wider in scope than the translated English version. See Litvinoff, supra. Generally, where a conflict exists between the French version of a code article and the English mistranslation thereof, the French version will prevail. Ross v. La Coste de Monterville, 502 So.2d 1026 (La.1987).
Recently, in Lafleur v. John Deere Company, 491 So.2d 624 (La.1986), a redhibition suit involving a farming implement necessary to plant a soy bean crop, the court was faced with determining whether a substantial jury award for mental anguish should be allowed to stand. Although the court repudiated the award, it affirmed the viability of Meador to the effect that nonpecuniary damages are available under LSA-C.C. Art. 1934(3) if "the contract has for its object `the gratification of some intellectual enjoyment.'" Lafleur, supra, at 630.[4]
Considering LSA-C.C. Art. 1934(3), the tenor of its successor, LSA-C.C. Art. 1998, Meador, Lafleur, the recent expansive appellate jurisprudence, and the scholarly comment on the subject, we believe that nonpecuniary damages should be awarded in redhibition cases through LSA-C.C. Art. 1934(3) if the contract at issue has as a principal object the gratification of some intellectual or nonpecuniary interest and the obligor knew or should have known of that object.
We determine that in the instant case the contract clearly had as its principal object the gratification of an intellectual interest and that the defendant obligor knew or should have known the failure of his product would cause a loss of that interest.
Having lived in a trailer prior to building this house, the plaintiffs were looking forward to fulfilling their dream of having a special house as a home. Their natural excitement about owning this house was heightened by the fact that it was to be located on a lot having a scenic view of the lake. As the photographs and testimony establish, the plaintiffs put much of themselves into this project from the very beginning. In their purchase of the lot, they were not motivated by pecuniary gain or even status. Instead, their reason for purchasing this lot was to build a house that would reflect their taste and that would provide them with the personal comfort that only a house located on a lake can provide. Aesthetics was an important aspect of their choice. The photographs in evidence confirm the beauty of plaintiffs' home and its setting.
These photographs also show that the lot was thickly wooded when the plaintiffs purchased it. The plaintiffs cleared the lot with the aid of a chainsaw and a large backhoe borrowed from Mrs. Hostetler's father. Clearing the lot entailed removing the numerous stumps and burning the brush removed from the lot. They labored on this project for almost a year and a half. Photographs taken after the clearing had been completed reflect the beauty of the lot itself and the sweeping view of the lake therefrom.
*1367 Once the lot was cleared, the plaintiffs worked on the house itself. Both plaintiffs and their friends put two coats of stain on the outside of the house. They also stained and painted the interior of the house. The plaintiffs decorated the house themselves. Mrs. Hostetler did all of the wallpapering.
Thus, plaintiffs' objective of purchasing a unique lot for the erection of a beautiful home with a broad view of the lake has been frustrated because of the defective lot. The home upon which they lavished considerable time, effort and love will be flooded if the lake commission decides to raise the lake. We will award plaintiffs $7,500 in damages for their loss in this respect.[5]
The plaintiffs also assert that they are entitled to additional attorney's fees of $5,000 because of this appeal. The trial court awarded them attorney's fees in the amount of $5,000. Because of the complexity of this case and the substantial increase in the plaintiffs' award, we find that the plaintiffs are entitled to additional attorney's fees in the amount of $2,500, for a total of $7,500.

COYLE'S LIABILITY
The plaintiffs sued Coyle Engineering Company, Inc., the surveyor, in redhibition and in tort. There can be no redhibitory action in the absence of a vendor-vendee relationship. Davis v. Davis, 353 So.2d 1060 (La.App. 2d Cir.1977), writ denied, 355 So.2d 549 (La.1978). We, therefore, find that the plaintiffs' remedy against Coyle is in damages for negligence.[6]
At Mr. Gray's request, Mr. Charles G. Coyle, president of Coyle Engineering Company, Inc., prepared the replat showing the flowage easement. Mr. Coyle testified that he did not survey the property to locate the easement. Instead, he relied on a topographical survey supplied by Mr. Gray to place the easement. It is undisputed that printed on this topographical survey is a caveat that the survey was suitable for "preliminary planning purposes" (emphasis added). It is also undisputed that this topographical survey was in error as to the location of the flowage easement. As a result, Mr. Coyle put the flowage easement in the wrong place on the replat. Mr. Coyle testified that after he had discovered that the easement was incorrectly located on the lot belonging to the plaintiffs' neighbor, he admitted to the Cypress-Black Bayou Lake Commission that he had made a mistake in mapping out the flowage easement.
The trial court found that Coyle was negligent in its preparation of the replat and thus was liable to the plaintiffs for their damages.
Surveyors are expected to perform with the same degree of care and skill exercised by others in the profession in the same general area. Crawford v. Gray and Associates, 493 So.2d 734 (La.App. 2d Cir. 1986), writs denied, 497 So.2d 1012 (La. 1986) and 497 So.2d 1013 (La.1986); Lawyers Title Insurance Company v. Carey Hodges and Associates, Inc., 358 So.2d 964 *1368 (La.App. 1st Cir.1978). James White, a registered surveyor called by the plaintiffs, testified that it was his opinion that in the Shreveport/Bossier area, it was not good engineering practice to prepare the final subdivision plat setting forth the flowage easement without taking field measurements and to rely instead on a topographical survey made for preliminary planning purposes.
It is undisputed that Coyle placed the flowage easement in the wrong place on the replat. That the plaintiffs' house is below the flowage easement is also undisputed. There is no question that Coyle's action was a cause in fact of the plaintiffs' damages. Except for the erroneous placement of the easement, the plaintiffs would not have bought the lot and built a house thereon.
Coyle knew at the time that the replat was prepared that it would be filed in the public records and that prospective purchasers of lots in the subdivision would rely upon the replat. The company owed a duty to the prospective purchasers and the actual purchasers, the plaintiffs, to exercise the degree of care and skill required of surveyors in the area. We agree with the trial court that Coyle failed to exercise this degree of care. We find that Coyle breached its duty to the plaintiffs when it determined the location of the flowage easement by relying on a topographical survey which certified that it was for preliminary planning purposes. That breach, then, was a direct cause of the purchase of the defective lot and the erection of the house thereon, as well as the resulting mental anguish suffered by the plaintiffs.
Thus, plaintiffs should likewise receive judgment against the defendant Coyle Engineering Company, Inc. in solido in the amount of $137,500.[7]

COMPARATIVE NEGLIGENCE
The trial court applied comparative negligence and reduced the plaintiffs' recovery by twenty-five percent. Comparative negligence is not a defense in a redhibition suit. A redhibition suit is a contractual action. Comparative negligence may only be asserted in a tort action. LSA-C.C. Art. 2323. The seller/manufacturer in this case, Gray, is guilty of contractual fault rather than delictual fault. Contractual fault has been defined as "the mere avoidance of a conventional obligation," whereas delictual fault is "the intentional or negligent causing of damages." Comment, supra, at 546. The underlying transaction in this case is a sale, a type of contract. LSA-C.C. Art. 2439. The relevant conventional obligation in this case is found in LSA-C.C. Arts. 2475 and 2476 which provide that the seller warrants that the thing he sells is free from redhibitory vices. Gray did not fulfill this obligation. For breach of this conventional obligation, the code grants the purchaser the remedy of redhibition. Redhibition is thus a remedy for contractual fault, not delictual fault.
In addition, the trial court's finding of fault is inconsistent with its finding of a redhibitory defect. In its written reasons for judgment, the trial court implied that because the replat noted that the location of the easement line was approximate, the plaintiffs should have made an effort to find the actual flowage easement line. The court is saying that the erroneous placement of the easement line is a defect that the plaintiffs should have discovered. If they should have discovered the defect, however, then it is not a redhibitory defect. LSA-C.C. Art. 2521 provides that an apparent defect, one that the buyer should have discovered by a simple inspection, is not a redhibitory vice. Pursell v. Kelly, 244 La. 323, 152 So.2d 36 (1963). It is inconsistent to say on the one hand that there is a redhibitory defect and then say on the other *1369 hand that the plaintiffs' recovery in redhibition is reduced because they were at fault in failing to discover the mistake themselves.
However, it is necessary that we consider the possible fault on the part of the plaintiffs since the doctrine of comparative negligence is applicable to their negligence suit against Coyle. We find that the plaintiffs were not at fault in failing to obtain another survey.[8] Although the survey relied upon noted that the location of the flowage easement as shown on the replat was approximate, the plaintiffs were not put on notice that the easement was 125 feet from its location on the replat. "Approximate" means "nearly correct or exact." Webster's New Collegiate Dictionary, 56 (1981). They did not fail to exercise due care by not getting another survey done. They were justified in interpreting the word "approximate" to mean that the flowage easement was within a few feet of its location on the replat.
We therefore determine that the trial court erroneously reduced plaintiffs' recovery against each of the defendants. For the reasons aforesaid, it will be necessary that the judgment be amended in this respect.

CONCLUSION
In summary, we have determined that the trial judge erred in decreeing a reduction in the purchase price as we have concluded that the easement at issue covering virtually the entire lot renders the lot useless for the purpose intended and entitles plaintiffs to rescission of the sale. Plaintiffs are thus entitled to a return of the purchase price of the lot along with the value of the house as damages in the total sum of $130,000. We have further determined that the trial court erred in reducing the judgment against Gray on the basis of comparative negligence since the award is in redhibition, a contractual concept. We have further determined that the trial court erred in reducing the award against Coyle because the plaintiffs were not comparatively negligent. We have further determined that the plaintiffs are entitled to an award of $7,500 representing mental anguish, which award is available against the defendant Gray as nonpecuniary damages in redhibition and against the defendant Coyle as an item of damages in tort. We have further determined that plaintiffs are entitled to an increase in their award for attorney's fees based upon their redhibitory action against the defendant Gray from $5,000 to $7,500. Of course, the defendant ultimately satisfying the award herein is entitled to title to the lot and improvements thereon.
Our conclusions preclude the need to consider plaintiffs' assignment of error complaining of the trial court's failure to consider the certain evidence of the flooding of the house.
The judgment of the trial court will therefore be reversed and amended in the foregoing respects. While the defendants have sought some relief by brief, neither has answered or appealed the remaining aspects of the judgment and those remaining aspects will therefore be affirmed. The trial court judgment is therefore recast as follows.

DECREE
Premises considered,
IT IS ORDERED, ADJUDGED AND DECREED that there be judgment herein in the amount of ONE HUNDRED THIRTY-SEVEN *1370 THOUSAND, FIVE HUNDRED and No/100 ($137,500) DOLLARS plus judicial interest from March 24, 1986 against W. GRAY & COMPANY, INC. and COYLE ENGINEERING COMPANY, INC., in solido, unto JAMES ARTHUR HOSTETLER and ELIZABETH LOUISE MARTIN McALISTER HOSTETLER.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that there be additional judgment herein for attorney's fees in the amount of SEVEN THOUSAND FIVE HUNDRED and No/100 ($7,500) DOLLARS plus judicial interest thereon from March 24, 1986 against W. GRAY & COMPANY, INC. and for JAMES ARTHUR HOSTETLER and ELIZABETH LOUISE MARTIN McALISTER HOSTETLER.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that the remaining two paragraphs of the trial court judgment concerning the third party demand of W. GRAY & COMPANY, INC. against COYLE ENGINEERING COMPANY, INC. regarding fees and costs are affirmed as written.
IT IS FURTHER ORDERED, ADJUDGED AND DECREED that plaintiffs render a deed conveying the lot and improvements thereon at issue herein to the defendant ultimately satisfying the award free and clear of all liens and encumbrances.
All costs are assessed to the defendants.
REVERSED IN PART, AMENDED IN PART, AFFIRMED IN PART, and RENDERED.

ON APPLICATION FOR REHEARING
Before JASPER E. JONES, SEXTON, LINDSAY, FRED W. JONES, Jr., and NORRIS, JJ.
Rehearing denied.
NOTES
[1] The trial court awarded a twenty percent reduction in the sales price of the lot, or $5,800. The remaining $20,200 ($26,000 less $5,800) was awarded as damages for the depreciation of the house.
[2] The present Civil Code article on nonpecuniary damages is LSA-C.C. Art. 1998. It provides as follows:

Damages for nonpecuniary loss may be recovered when the contract, because of its nature, is intended to gratify a nonpecuniary interest and, because of the circumstances surrounding the formation or the nonperformance of the contract, the obligor knew, or should have known, that his failure to perform would cause that kind of loss.
Former Civil Code Article 1934(3) provides that:
Where the contract has for its object the gratification of some intellectual enjoyment, whether in religion, morality or taste, or some convenience or other legal gratification, although these are not appreciated in money by the parties, yet damages are due for their breach; a contract for a religious or charitable foundation, a promise of marriage, or an engagement for a work of some of the fine arts, are objects and examples of this rule.
[3] In Free v. Franklin Guest Home, Inc., 463 So.2d 865 (La.App. 2d Cir.1985), writs denied, 467 So.2d 535 (La.1985) and 467 So.2d 536 (La. 1985), the Second Circuit recognized and accepted Litvinoff's translation of the article. The court focused on the mistranslation of the French word "commodite" as "convenience" rather than "personal comfort."
[4] While the language of Lafleur was subscribed to by only three justices, Justice Marcus's concurring opinion indicates that he subscribes to the majority language and his thoughts are more of an addition rather than a distinction. However, it should be noted that the opinion was subscribed to by Justice Blanche, who has since retired, rather than his successor, Justice Cole.
[5] At first glance, this decision allowing LSA-C.C. Art. 1934(3) damages in a redhibition case might seem contrary to Price v. Huey Childs Builder, Inc., 426 So.2d 398 (La.App. 2d Cir. 1983), writ denied, 433 So.2d 164 (La.1983), where we rejected a combination contractual/redhibitory analysis and determined that only the specific codal articles on construction contracts pertained. In that case, we focused on the nature of the obligations and the specific legislative intent manifested by the code articles involved. The difference in the instant case is that while redhibition is indeed a specific remedy, the codal language allowing damages in redhibition cases is quite general. We thus determined that the language and placement in the code of LSA-C.C. Arts. 2545 and 1934(3) are such that they should and can be read together.
[6] The plaintiffs also could have sued Coyle on a contractual theory under State ex rel. Guste v. Simoni, Heck & Associates, 331 So.2d 478 (La. 1976). Under the rationale of that case, privity of contract is not necessary in order for one to sue for breach of contract as long as performance of that contract was expressly intended to benefit the plaintiff. Coyle and Gray entered into an agreement to prepare the survey. There was no privity between Coyle and the plaintiffs, but Coyle's performance under the agreement was expressly intended to benefit purchasers of lots such as the plaintiffs; thus, the plaintiffs can enforce that obligation.
[7] The attorney's fees aspect of the judgment cannot be assessed against Coyle as there is no redhibitory action against him. The suit against him is in tort. Attorney's fees are recoverable in certain circumstances per LSA-C.C. Art. 2545 in redhibitory actions. However, they are not available in a tort action. Additionally, if plaintiffs were proceeding on a contractual theory per State ex rel. Guste v. Simoni, Heck & Associates, 331 So.2d 478 (La.1976), attorney's fees would likewise not be available.
[8] This finding precludes the necessity of considering the impact of Philippe v. Browning Arms Company, 395 So.2d 310 (La.1981), on the instant circumstances. In Philippe, the plaintiff couched his cause of action resulting from personal injury in products liability terms. On rehearing, the Supreme Court reversed its earlier determination that attorney's fees were not recoverable because the plaintiff had only proceeded in tort and had not made a redhibitory demand. Philippe is based on the idea that Louisiana does not have a theory of the case but enjoys fact pleading. Thus, plaintiff is entitled to any relief his facts allow. State ex rel. Guste v. Simoni, Heck & Associates, 331 So.2d 478 (La.1976), allows the plaintiff in a situation such as the instant case to sue a defendant in Coyle's position in contract. Of course, under a contractual theory, the award cannot be reduced by comparative negligence. Thus, our holding allows us to avoid considering the Philippe ramifications on the conflicting theories of recovery.